The case is Ithicon v. ITC, 2022-11-11. Mr. Tesai is it? Yes, your honor. Please proceed. Good morning, your honors. May it please the court. I'll start with the 369 patent. The ITC's claimed construction incorrectly excluded curved surfaces. The ITC's mistake was limiting the structure to the illustrated flat surface and disregarding the broader linkage to ramped surfaces and otherwise sloped surfaces in the text. This is means for guiding. That is correct, your honor. A ramped surface is a structure that is clearly linked to the function. This is a separate disclosure that is linked by a dependent claim that is part of the specification by virtue of being an original claim in the application. Ramps can be curved like a skateboard ramp. They can be flat like a ramp used to bring furniture up a moving truck. The 369 patent uses the words ramped surface in exactly that way to mean both flat and curved surfaces. What if we were to read the relevant passage in the actual illustrated straight ramps in those figures? And then if we look at it like that and know on the background principle that the patent drafter has a duty to clearly link the structure with the resided function and the means plus function limitation, why shouldn't that be pretty much the end of the story on what is the corresponding structure for means for guiding? Two reasons, your honor. First, ramped surface is separately linked from that passage you referred to. It is separately linked by a dependent claim in the original application. It is part of the specification and that is a clear link. A clear link of ramped surface as a structure performing the function. Second reason. I'm sorry, what claim are you referring to? Dependent claim 23 was an original claim in the application. As we pointed out in our brief, an original claim in an application is part of the specification. Claim 23 doesn't say curved surface. It says ramped surface and ramped surfaces, there is no dispute and there is no evidence. There is no dispute that ramped surfaces are both flat and curved. Maybe in the most general sense, but in the context of a means for guiding, maybe not. In the context of this patent, the words ramped surface are used to include both flat and curved surfaces. Appendix 392, column 26, the words ramped surface are described as comprising one or more flat surfaces, curved surfaces, concave surfaces, and or convex surfaces. The word ramped surface means the same thing. That's a reference to a different element of this overall assembly, of this overall tool. It is a reference. It has nothing to do with the means for guiding. It is a reference to Ridge 615 can comprise a ramped surface and it says ramped surfaces are these things. The words ramped surface means the same thing. What element is it talking about in that column 25? It is talking about Ridge 615, which I agree. What is Ridge 615? Ridge 615, I agree, Your Honor, is not the structure for performing this. What is it? It's on the cartridge. It is not part of the guiding function. The purpose of that passage is to understand that ramped surface is used consistently throughout this patent. Ramped surface means both flat and curved surfaces. There are other examples of the words ramped being used. Is there something in the specification that when we say ramped, we are talking about it in the broader casual sense and not in just a straight edge sense? That paragraph that I just read says ramped surface. It doesn't say what I just said. It just describes element 615, Ridge 615 on the cartridge. The exact language is Ridge 615 can comprise a ramped surface, which can comprise one or more flat surfaces, curved surfaces. It is saying that ramped surfaces are these things. There are other examples of ramps that are both flat and curved and described as such in the patent. I get to the other point, which is the separate language, which is chamfer or otherwise slope as shown. The word otherwise there is critical. It means in a different way or manner. A chamfer is a constant slope surface, a flat surface. A flat surface, as the ITC construed the term, is exactly like a chamfer, sloped exactly like a chamfer. It is not sloped in a different way than a chamfer. The language is otherwise sloped. It is not likewise sloped. To be sloped in a different way than a chamfer is a variable slope, which would be a curved surface. Including curved surfaces gives meaning to otherwise. Limiting to flat surfaces does not. The ITC makes two arguments in that respect. One is they are saying otherwise refers to bevels or inclined planes. That does not give meaning to otherwise. Bevels and inclined planes are constant sloped flat in the same... No, there is a strong statutory interpretation principle that we are not supposed to read I don't know if there is a principle quite like that when it comes to reading a patent specification. This wouldn't be the first patent out there ever in the history of patents where a patent drafter spoke redundantly in describing something. Your Honor, I don't see that there is any justification here to render the word otherwise superfluous. We can give meaning to otherwise and we can give meaning to as shown. In a claim term you wouldn't render that superfluous. Here in a means plus function term we are taking the specification language, which we agree is linked, and making that the claim language. There is no reason why you would take that language and say this is what is being claimed and say let's render otherwise superfluous. There is no basis for that and it follows because you wouldn't render a claim language superfluous for a means plus function if you are taking the specification language and making it part of the claim. You wouldn't render that language superfluous either. Otherwise under the ITC's construction does not have any meaning because bevels and inclined planes as they are saying are exactly the same as a chamfer. They are not sloped in a different way. I think the other point is Ethicon, we are not ignoring the words as shown. As shown refers the reader to the figures that show you where the structure are located and how they perform the function. In other words, see the figure, it shows you chamfer 6133, that is what is actually shown, and it also shows you where the otherwise sloped surface would be located. Your Honor, if I may move on to the 969 patent. For the validity of the 969 patent, the ITC failed to address the evidence that the prior art PMI device was subject to a safety related recall. A POSA would not be motivated to combine an unsafe surgical device with a robotic system. At appendix 3043, Ethicon's expert identified the FDA recall as a key reason why a POSA would not combine it with a robotic system. You are talking about a person of ordinary skill speaking English. Go ahead. I'm sorry, I apologize. At appendix 2554, the recall notice itself states that the action is being undertaken due to certain products potentially exhibiting compromised stable formation. The recall was recalled the following year, right? It was terminated in 2010. That is the argument and we agree that there was a termination. The problem there is that it was automatically terminated, as we pointed out with the CFR in our brief, because PMI stapler was never put back on the market. That is confirmed by the testimony of Intuitive's own witness, appendix 2752. That statement, I read that statement, it seemed rather equivocal. There was no proclamation that yes, this was terminated and yes, this stapler is off the market now and no longer will ever be on the market. It's less than clear about saying that. That was the Intuitive witness most knowledgeable about the PMI stapler? There is no evidence in the record whatsoever that the PMI stapler was ever put back on the market. That is the only evidence and the evidence shows that according to Intuitive's most knowledgeable witness, the PMI staplers were never put back on the market. You pointed to that testimony in your gray brief. It wasn't in your blue brief. Was it ever presented to the ALJ or the ITC in the briefing below? Absolutely, your honor. That testimony was designated as part of the hearing and the issue here is, your honor, the ITC- Was it in your brief when you said, oh no, claim 24 of the 969 could never be obvious because not only was there a safety recall, but when the safety recall was terminated, the stapler was never put back on the market. See what this one witness said who kind of equivocally suggests that. Our expert pointed to the testimony of the Intuitive witness. The argument was made to the ITC, sorry, to the ALJ in our briefs. Was it stated the way I just stated it? The argument was presented that the stapler was recalled and they were never put back on the market. There is no discussion of the recall in the ITC's decision and the ALJ summarily dismissed the recall for the wrong reason because he was relying on this 2008 agreement and was of the view that the poster would not be aware of the recall in 2008 when that agreement was signed. The commission struck the reliance on that agreement in its decision and the relevant date here for the obviousness question is 2011. So the only reasoning in the ALJ's decision and by virtue of the commission's opinion is wrong. By 2011, wasn't it pretty established and conventional to connect surgical tools to robots and have robots control surgical tools? I respectfully disagree as evidenced by the IPRs in this case where there were seven grounds presented that went to final written decision where robotic tools, the argument was being made for this particular claim that certain handheld tools would be combined with a robot, those were all rejected. Seven different grounds. This is the eighth ground involving a different tool that had a safety problem and that issue was never considered by the ITC. You're not suggesting that your inventor was the first one to connect a surgical tool to a robot. That is not what we've claimed either. The claim is not to any tool. There are particular elements of this tool. There were in fact other tools that had been connected to a robot. But the relevant question for obviousness is whether you would be motivated to combine that tool with the robotic system which is what was being argued by the other side. Counselor, you're well into your rebuttal time. Do you want to save it or continue? I will save the rebuttal time, Your Honor. Thank you. Just one quick question. The first 35 pages of the 369 patent is a very long list of prior art documents that were cited in the record. Is this standard practice for your client to submit, I don't know, 2,000 references to a patent examiner? Your Honor, in this particular instance with these robotic tools, I believe there are a substantial number of patents out there on robotic tools and staplers and prior art. I don't know if it's standard practice for every patent, but I believe in this situation there are a number of patents covering staplers. The client believes it's prudent to disclose those. How does that enable the examiner to determine what is most relevant? In this case, in the prosecution, this particular... On your answer, I'm not sure I have an answer to that. I don't think there's an issue on this appeal. And in this case, to be fair, the 369 patent was put through IPR and the claims survived the IPR. Thank you. We'll save the rest of your time. Mr. Richards. Thank you, Your Honors. May it please the Court. This case is essentially about three commission findings that are unremarkable applications of settled patent law, and we would request that they be affirmed as such. I'll start in the same order as my friend so I can address the same points. With the 369 patent and the means for guiding, there's no dispute here as to what the function is. It's a guiding the at least one lower foot on the firing element out of the proximal channel opening and into the internal passage. The commission then did exactly what it was supposed to do. It looked through the specification for structure that was clearly linked. I don't believe there's actually any dispute that that structure is at column 77, lines 24 through 44. And it's what we've already talked about. There's a chamfer on the lower foot of the firing element, of which there's no dispute that the chamfers are flat. And then there is a portion of the elongate channel 6122 defining the proximal end 6131 of the internal passage 6030 that can either have a chamfer, again, flat, or otherwise be sloped as shown in figures 40 through 41. What's shown in figures 40 through 41, when you look to the portion of the elongate channel defining the proximal end of the internal passageway, is a flat slope. Now, my friend mentioned that there are ramps claimed in any dispute that, in a general sense, a ramp could be curved. And there's also no dispute that this was an original claim. But the original claim was also dependent on the independent claim reciting means for guiding. As a statutory matter, we know that means it must be an additional limitation on the means for guiding. The argument that Ethicon is making instead is that the disclosure of this additional limitation actually wipes out the corresponding structure limitations on the independent limitation from which it depends. That's the problem with the ramps answer. It's not an issue of whether ramps are flat or narrow. It's an issue of the fact that Claim 23 depends. And therefore, by statute, must be an additional limitation. The court has seen this before. The Safran case is remarkably on point. So is the Lightrim case. Both of those were the exact same argument where a party looked to a dependent claim, essentially, to wipe out limitations that were in the independent claim. And I want to be clear, there's no conflict between 23 and how the Commission construed this claim. As we heard my friend mention, a ramp can be flat. And thus, a flat ramp as an additional limitation on the means for guiding is entirely consistent with the Commission's construction that the means for guiding via the corresponding structure is flat. Turning to otherwise sloped, this is just a matter of misconstruing what otherwise is referring to. Otherwise, in that sentence, refers to something other than a chamfer. I think I heard an assertion that a chamfer is any flat surface. But that's not what the evidence shows here. The testimony from Dr. Howe, that's at appendix page 3485, question answer 62, explains that a chamfer is a specific type of sloped surface where a corner is removed to leave a flat surface. He then goes on to give two other examples in Bevels and in Kine Plains. So here, otherwise, is simply saying it can be a chamfer, or it can be something other than a chamfer, as long as it is also sloped as shown in figures 40 through 41. With that understanding, there's nothing redundant about the Commission's construction. There's no superfluity in the Commission's construction. I don't understand. Why isn't what is being illustrated in figures 40 and 41 the definition of a chamfer? Why isn't it? Yeah. You're cutting off a corner and with a straight line. I wouldn't disagree with you, Your Honor. What's being shown there is a chamfer. Right. So that leads us right into the point that the other side's trying to make, which is, well, we want to assume the patent drafter wasn't being redundant. And so maybe, as otherwise shown, should make us think a little harder about whether it has to only be a straight line because it says chamfer or otherwise shown. So the problem with that reading, Your Honor, is that would actually require rewriting the corresponding structure. To achieve that reading, what you have to do is essentially move that earlier in the sentence. So the sentence would then read, chamfer 6133 as shown or be otherwise sloped. That is essentially the reading that Ethicon is pushing for. And the Commission isn't able to rewrite the corresponding structure in a patent to achieve that. I guess what I'm saying is it seems unnecessary to try to bend over backwards to try to find meaning in this extra phrase if it turns out that what the extra phrase is really through the illustration figures 40 and 41 is actually a chamfer. That's certainly true, Your Honor. If all that phrase was saying is just a chamfer, that again is still consistent with the Commission's construction, right? The Commission's construction merely resolved the dispute that was before it, whether or not curved surfaces fall within the scope of the means for guiding. And it resolved that by saying, no, they don't. As you point out, if that extra verbiage simply is another way of saying a chamfer, the Commission's construction is still correct. Before you sit down, you're running out of time. Can we talk a little bit about Sun Tiger, which is the infringement argument on 369? Sure. And whether Sun Tiger permits the other side to the plaintiff to make the argument that all they have to do is look at one piece of the corresponding ramp in the sure form stapler and find a straight line, and therefore that's good enough for infringement purposes. They don't need a ramp from top to bottom to be straight and flat. Of course. So Sun Tiger is inapplicable here, and I'm not sure that this has been caught on Ethicon's side. In Sun Tiger, the claims were to sunglass lenses, but the actual claim limitations simply specified you've got to have a plastic matrix that has to have certain light transmission characteristics. And so they were orange lenses. They had a gray gradient coating on them, and it essentially said, so there might be a spot down in the lower right-hand corner that's going to meet these transmission characteristics. This court held that that portion of the lens met every single limitation of the claim it issued. That's very different from the infringement argument here, where we're talking about a portion of a sloped surface. That portion of the sloped surface definitely doesn't meet every limitation of this claim. This claim, for instance, has a firing element limitation. The portion of the sloped surface is clearly not the firing element. Sun Tiger was dealing with a very different problem than what we have here. Can you get to the FDA recall? Yes. So the FDA recall, I want to make a particular point. The commission didn't address it, right? The commission did not write about it. I understand there's been an assertion the commission didn't consider it. That's not true. The ALJ considered it. The commission specifically reviewed that portion of the ALJ's findings, and upon reviewing them, concluded that on balance, the other substantial evidence still supported a motivation to combine in a reasonable expectation for success. I'd like to point out the expert testimony from Ethicon's side. I'm sorry. I see my time has expired. May I finish my answer? Ethicon's expert has a single line, quite literally one sentence, pointing this out. I'm not aware of anywhere in the record, before the commission, before the ALJ, where Ethicon ever even acknowledged that the recall had been terminated. I'm sorry. Yes, that the recall had been terminated. I think what my friend said is true. They pointed out there had been a recall, and the products hadn't been put back on the market. But when I pulled the CFR section that was cited in their reply brief for the first time, it says to me that the recall will be terminated when reasonable efforts have been made to remove or correct the product in accordance with the recall strategy. I don't know how that leads to the conclusion that the recall was terminated because the product was never put back on the market. If there is a lack of writing on this topic in the commission's opinion, it's because it is consistent with the amount it was treated below. We have expert testimony that is a single sentence. With that, your honors, I'll sit down. Thank you for allowing me to answer the question. Thank you, counsel. Mr. Denning, Intuitive. I assume your arguments will be expressed, not intuitive. They will be, your honor. Good morning. Roger Denning of Fish and Richardson on behalf of the intervener, Intuitive. I want to touch on just a couple of the things that have already been discussed this morning, and then I want to move to something new that hasn't been talked about. First, on the issue of the or otherwise sloped as shown, there's testimony from Dr. Howe, who was Intuitive's expert in this case, that otherwise sloped as shown would be understood by one of skill in the art to mean other flat surfaces. We've seen in the patent, it shows a chamfer, a corner that's been cut off. Dr. Howe testified there are also bevels, and there are also inclined planes. All of those are surfaces that are otherwise sloped as shown in figures 40 and 41. They're all flat surfaces, so they support the commission's construction. I don't mean to nitpick, but I don't know that what you just showed is in the record. Would you just point it toward Mr. Desai so he sees what it is? Thank you, Your Honor. I'm happy to do so, and I will note, for the record, Dr. Howe's testimony is at 3485 and 3486 of the appendix, and also 1603 and 1604. With regard to the point about infringement and sun tiger, this is a means plus function limitation. What you need to identify is the function in the claim, and then the structure in the UQ's product that supposedly practices that function, and then match up that structure with the corresponding structure in the specification and see if they match. Here, the only structure that Ethicon or its expert, Dr. Franczak, identified as performing the function of the means we're guiding is that entire sloped surface, the curve and the straight line. You look at that entire surface, the curve and the slope line, and compare that to the flat surfaces in figures 40 and 41, they're not the same. They're not identical, and they need to be. Ethicon has not made any equivalence argument here, so that disposes with infringement of the means for guiding limitation. One brief point on the recall testimony, this is on the 969 validity point, and the motivation to combine. The initial determination below addressed the recall, and I'll point the court to appendix 525, where the chief judge said, finally Ethicon makes several arguments as to why a person of ordinary skill in the art would not, in fact, combine the references. There's actually a footnote shortly after that talking about the recall. Then the chief judge said, additionally, Dr. Vitacunas' testimony shows that these concerns are unfounded, and gives a site to Dr. Vitacunas' testimony. Absolutely, the chief judge considered the recall, considered the testimony from Dr. Vitacunas, who said, one of skill in the art would not be deterred by this FDA recall. Dr. Vitacunas also testified, this wasn't something wrong with the product. It wasn't as if all staplers were found to be defective. It was a manufacturing issue with this particular stapler, and Dr. Vitacunas said one of skill would not be deterred by that, even if there was a recall. Of course, the recall was terminated. There is no evidence in the record. The recall was in effect for six months, and it was three and a half years from the I60 device being cleared by FDA before the priority date of the 969 patent. So for three of those three and a half years, there was no recall on the PMI stapler. The recall was terminated. There's no evidence in the record that it was terminated because of removing the PMI stapler from the market. The testimony they rely on is from an intuitive engineer, not a PMI engineer, who said, to my knowledge, they didn't put it back on the market. But that is certainly not evidence that that was the reason for the recall. There is so much other substantial evidence in the record to support the commission's finding of motivation to combine here. The commission cites to the initial determination and page after page from the chief judge talking about how one of skill in the art knew that staplers offered benefits over, I'm sorry, that robotic instruments offered benefits over handheld instruments, that you would combine a stapler with the robotic instrument and that one of skill in the art would know how to make the adjustments to do that. There's overwhelming evidence of a motivation to combine, let alone substantial evidence. The new issue that I referenced earlier that I want to raise with the court is the alternative grounds for non-infringement on the 369 patent, and that's the proximal channel opening. We submit that there's an issue of law here in that in making its infringement determination, the commission looked at the wrong product. The commission did not look at the product as imported by Intuitive into the United States, but instead looked at a subassembly that is altered before it is ever entered into the United States. The commission looked at the channel, which is one subcomponent, and identified an opening in the bottom of that channel and said that must be the proximal channel opening and it meets these limitations. The problem is that that opening is covered by a welded-on cover before it's ever imported, before it's ever sold, before it's ever used, and that cover cannot be removed. That cover is a permanent part of the bottom of the stapler. Does it completely cover the proximal channel opening? There is a small oval that's left uncovered. There's an opening in the cover. That's right, and the commission pointed actually to that opening and said, well, that meets the one limitation that says you need to be able to see the firing elements through that hole. The problem is that hole doesn't meet the limitation requiring that it be sized to receive the laterally extending lower foot. The lower foot of that I-beam, no way, can fit through that hole, and I would direct your attention to, in Intuitive's brief at page 25, we show those two things juxtaposed across each other, and you can see there's no way that the lower foot would fit through that hole. It's only by using the hole in the channel, the sub-assembly that is never actually part of the product, and then using the hole in the cover that the commission can find that it meets all the limitations, and we will submit that that's inappropriate. You should look at the product as imported into the United States. I see that I'm into the red light time. Right, you are outside of your allotted time. Okay. Final thought? I would just encourage the courts to confirm the findings of non-infringement and amnibility for the 969 patent and non-infringement for the 369 patent. Thank you, Your Honor. Thank you, Mr. Denning. Mr. Tsai, we'll give you three minutes for rebuttal. Thank you, Your Honor. Let me start with the 369 patent again, and the ramp surface and the argument that would wipe out the independent claim. The independent claim cannot exclude a ramp surface. The dependent claim specifically says that that is structure for performing the guiding. The independent claim cannot remove ramp surface, and the question is, do ramps include curves? The Saffron case was the case that my friend relied on. That was a claim differentiation case. This is different. This is an original claim in the application. It is part of the specification. That was not an issue in Saffron. Second point, in Saffron, the specification specifically limited to hydrolyzable bonds, and that's why they ended up limiting the claim to that. Here, ramped surface is not limited in the 369 specification to flat surfaces. The opposite is true. The patent uses the word ramped surface broadly to cover both flat and curved surfaces, which is the ordinary meaning of ramped surface. Going to the otherwise language, the only argument they have is that otherwise is referring to bevels or inclined planes. The issue is those are sloped in the same way as a chamfer. They are not sloped in a different way than a chamfer. They do not give meaning to otherwise. Two places that were pointed to was 3485, which is Dr. Howell's testimony. He was distinguishing chamfers, bevels, and inclined planes from curved surfaces. His testimony there is that bevels and inclined planes are the same type of sloped surface, not different types of sloped surfaces. They are not otherwise sloped. In other words, a chamfer, a bevel, and an inclined plane are not otherwise sloped. They are sloped the same. At 1603, which was the other citation, this was even more clear that the error that was being made Dr. Howell said a chamfer in that testimony is a constant sloped surface. He then said otherwise sloped is a constant sloped surface if you read that testimony. He was reading the phrase as constant sloped surface or otherwise constant sloped surface, which makes no sense. That is what you will see at 1603. Let me turn to the validity, the 969, the recall issue. The only place in the ALJ's and the Commission's opinion was a footnote on the recall. It was dismissed because the recall was in 2009 and the intuitive PMI agreement was in 2008. That reasoning does not hold. Effectively, the recall was unaddressed by the Commission and the ALJ. Dr. Viticunis' testimony at 3348 does not address the statement in the recall  He talks about other parts of the recall, but he doesn't address the part that talks about the safety issue. And that's how he offers the opinion that it wasn't a safety issue because he doesn't address the part of the recall that was saying it was a safety issue. The recall and the termination, the only evidence in the record is that the PMI staplers were never put back on the market. There is no testimony from anyone that they were ever put back on the market. And the recall notice itself states that Covidian, which bought PMI, was planning to introduce unique powered products. To replace the PMI staplers.